I'm John Sheldon. I represent Christopher Coleman pro bono in this case. As Judge Gregory has mentioned, trial is about truth-taking. And the issue in this case is that Christopher Coleman's sentencing proceeding was entirely false. The legal standard for this ineffective assistance of counsel case is that trial counsel's performance was deficient and there's a reasonable probability that if he was not deficient, Coleman would have received some other sentence than the 29 active years. At habeas, there was really no dispute that trial counsel's performance was deficient. The only issue was whether Coleman was prejudiced by the terribly false presentation at sentencing of Coleman's juvenile military history and medical history. The crime was a bad crime. Coleman returned from Kandahar, Afghanistan, and shortly after returning, in a drunken state, was invited into the home of a young lady. She opened her safe, took out her opioids, took some, in her safe was a gun. Coleman was showing her the gun. The gun went off and shot her once. She was seriously injured by that. Coleman was arrested. Shortly thereafter, same day, they released him. They released him because it was not an intentional shooting. They released him. He continued drinking. He went straight to a bar with his friend, drank all day long, got in a bar fight, broke the ankle of another person at the bar. Charged in the city and the county with both crimes. Malicious wounding in the shooting, malicious wounding in the bar. He pled guilty. It was obvious what sentencing was going to be about. It was going to be about Coleman and how he could, after having accidentally shot somebody, been charged by the magistrate, how he could then go drinking and then get in a bar fight. It was going to be about who Coleman was and how much time he deserved in prison. That was obvious. And trial counsel came up with a strategy. And his strategy was to present Coleman as a man with no prior criminal history who had been a war hero and deserved sympathy even though he had committed these two acts. The problem that trial counsel made was he presented this scenario about Coleman, no prior criminal history, seriously wounded, PTSD and traumatic brain injuries. He presented this evidence in the worst way possible in a court, whether at trial or at sentencing. He presented it solely through his client's testimony. And because trial counsel didn't prepare, he couldn't support his client's testimony with easily obtainable, objective evidence of Coleman's difficult, very difficult, being the victim of problems as a juvenile. His compassionate and good behavior as a juvenile, his traumatic brain injuries, two of them, his PTSD and his heroic efforts. He supported Coleman with no documents. The Lewis Gale medical records, which proved that Coleman had PTSD and traumatic brain injuries, were retrieved from a hospital only miles from the courthouse. Ms. Berry, the probation officer who testified at the evidentiary hearing, that Coleman had no juvenile history at all. And all of his misbehavior was to get away from an abusive home. And he was, in fact, the most compassionate man that she had ever supervised. She worked in that court. She was easily available. Colonel Gaylord testified both to Coleman's heroic acts in Afghanistan and to his physical injuries that the court found did not exist. Physical injuries, shrapnel injuries, traumatic brain injuries. Colonel Gaylord. Just on that point, some of this is what Coleman himself told probation, right? He told probation that his health was good. He didn't have any ongoing injuries or effects from his service, that he didn't have any sort of previous record, et cetera. Some of this, what he said, then came back and he was crossed on it. Not necessarily because there weren't records, but it seemed that he had said one thing and then at this subsequent habeas hearing was saying another. I hear you, Judge Rushing, but I don't think that's the case. I think what happened was he talked to probation and in both during sentencing he testified and at the evidentiary hearing. He explained it and Colonel Gaylord explained it too. You're talking about the evidentiary hearing in the post-sentencing habeas corpus proceedings? Yes, Your Honor. All right, but you're talking about sentencing. We're talking about sentencing mainly. Sentencing. Yes, that's right. And it was for the same judge, right? Yes, Your Honor. Years apart. Five years apart. Five years apart. And that's in the circuit court of Roanoke County or Roanoke City? Combined. We had the hearing in Roanoke City, but it was combined, two cases combined. So that's the way they set up the joint. The distinction is not making any difference.  Yes. The same circuit court? Yes, Your Honor. So you had the sentencing there. Five years later you had this hearing and then you have the federal proceeding in front of Judge Moon. Yes, Judge King. Were there any evidence presented in front of Judge Moon? No, Your Honor. All the evidence was presented in the state habeas proceeding? Yes, Your Honor. Answering your question more directly. Both during the sentencing hearing and the evidentiary hearing is important for this reason. Colonel Gaylord explained why. Colonel Gaylord was a commanding officer in Afghanistan. That's right. His commanding officer who Christopher Coleman's main job was to protect him in Afghanistan. Special forces? What's that? Was Colonel Gaylord and your client in a special forces unit? I think that's over my head of what unit they were in. They were from Fort Bragg. Yes, that's right. That's right. And so when Coleman gets home, he does what the vast majority of military people that come home with serious injuries do. He ignores them. He ignores his PTSD. He ignores his TBI. And he tries to get away. He was hospitalized at Womack when he came back. He was hospitalized and then he was released. At Fort Bragg? Yes, that's right. He had a head injury. That's right, Your Honor. Two concussions, at least. Two traumatic brain injuries? Two traumatic brain injuries, at least. Two of them, at least, as well as shrapnel injuries. By the army medical, by the military medical services. Yes, Your Honor. And before that, though, he'd been in the hospital. I was in Qatar. Yes. In the military hospital for these traumatic brain injuries. And he'd been hospitalized in Germany. Yes, Your Honor. At our army hospital in Germany. That's right. And then transferred back to Womack. That's right. And the sentencing court knew none of this. At Womack's Fort Bragg. Yes, Your Honor. And do you know how, was any of that presented, none of that was presented at the sentencing? None of it. And you got into it with the... Easily obtainable. Did you represent him at the state habeas hearing? Yes, Your Honor. The state habeas hearing. Yes, Your Honor. I represented Coleman in the state habeas hearing. And you represented him in the federal habeas proceedings. Yes, Your Honor. So you've been with him, but you didn't represent him at the sentencing. And I'm with him now. You're with him now. For other reasons than this, but yes, I'm with him. It's very hard to have PTSD in prison. But the sentencing hearing is where you... That's where the mistakes were made. That's where the mistakes were made by the previous counsel. That's right. And he acknowledges that he didn't do... That's right. It wasn't in dispute for anybody. Does he acknowledge that he was constitutionally insufficient in his view? Yes, and nobody disputed that. That he presented a theory for a very important... The only issue for us is whether the federal standard is satisfied on prejudice. That's right. That's right. Reasonable probability that if the truth had been told, he would have got a sentence other than 29 years. But... Isn't the standard actually that no reasonable judge could conclude? Right. First I have to show the constitutional violation of prejudice. And then I don't win unless I also show the 2254 D1 and 2, either one, unreasonableness. And of course, if anybody can make sense of the law 2254 D1 and 2 law, the 25 years of U.S. Supreme Court cases, they say one thing, they do another. In Porter and Wiggins, they look at it and they say, of course there would have been a different sentence to go back. And then of course we have lots of language that's quite harsh, it's quite hard to get over, and I think we easily get over it. And that's because it was obvious why... It was obvious why, I'm going to take one more minute because I haven't answered your question yet, of why Coleman said to the probation officer, one, I don't have a criminal record because he didn't think he did it, and two, he glossed over his injuries because that's what military guys do. And that's how they get into trouble. And that's what Colonel Gaylord testified so compellingly to. He said, that's what we do, we're tough guys, we kill people, we come home and we say we don't need help. But it was obvious by the time he got to sentencing, it was obvious for a lawyer that he had brain injuries, he had told his lawyer, it was obvious he had PTSD, so that was brought out at sentencing. But because Coleman, this is the terrible part of the case, because Coleman was made out to be such a liar, nobody would have believed the good stuff he said. Is that true? When I was reading, I saw the court said it didn't find his statements of remorse credible, but I didn't see the sentencing court saying I didn't find anything else he said to be credible. Well, I think it's a short sentencing transcript. And just, I think if you look at the probation officer's testimony, and the prosecution four times makes him out to be a liar, right? Twice to the probation officer. Probation officer, the prosecutor asked probation officer at sentencing, he told you he didn't have a criminal history, didn't he? But he had an extensive juvenile criminal history, and the probation officer says yes. And then Mr. Coleman explained, right, that the reason I said that is that I thought it was expunged, right? The sentencing court heard that. He heard that, but why they believe that, I don't know, because the probation officer said he has an extensive criminal history. Then the prosecution... Probation officer said he had an extensive criminal history that was based on the juvenile record. That's right, and it was entirely wrong. Which had been expunged. Entirely wrong. He had no criminal history. He said it had been expunged. He did say that. He told his lawyers it had been expunged, but his lawyer didn't go check it out. That's right. So he was cross-examined. So first the probation officer says he lies about his criminal history. Then the probation officer says, well, he did say he had an injury, and the prosecution asked probation officer, did you find records to substantiate that? No, I didn't. And then when Coleman testifies, the prosecutor asked Coleman about both things. You lied about your criminal history. He's been told by his attorney... So they impeached him on the criminal history? What's that? The prosecutor impeached him on his criminal history. On his criminal history, and then... Expunged. That's right, and then... Did the prosecutor not know they had been expunged? Correct. Nobody had known that, one, he'd never been convicted. Two, they'd all been dismissed. Three, the record had been expunged. Did the prosecutor impeach him on the history or on the fact that he said he didn't have one? I'm afraid I'm going to run out of all my rebuttal time. Answer the question. We're not going to deem you on that. Go ahead. Okay. Would you repeat the question to address you? I thought the prosecutor impeached him on the fact that he said he didn't have a history, not didn't impeach him with the juvenile records, right? The prosecutor didn't come in and say, why should we trust you? You have all of this criminal history. The prosecutor said, you said you didn't have it. Correct. But it turns out you do, and he explained, yeah, I said that because it's been expunged. Because I thought it would be expunged, but it was accepted by everybody at sentencing that he had a criminal history. It was impeachment about the truthfulness of his statement. Yes, which I think is worse. And also what's worse. But it's not impeachment with a criminal history. We understand that's a different thing. You're absolutely right about that. And then later when he testified, he was impeached by the prosecution on cross on both things. You lied about your criminal history, didn't you? Yes. You lied about, well, you say you had these injuries in the military, didn't you? But there's no documentation of them, is there? Did the prosecutor use the term lie? Page 289 and 291 of the appendix. If he didn't use the word lie, that's exactly what he meant. 289 and 291 of the appendix. Coleman was shown to be a liar. Did he use the word misrepresented? Well, I'd have to turn to those pages. But it's clear that that's what he was doing. He had had juvenile problems, and they had been expunged. That's the fact of the matter. Dismissed and expunged. No convictions. Correct. That's right. That's right. His lawyer didn't know that. The lawyer didn't know that. It was so easy to find. The probation officer was right there. He had serious medical problems, brain injuries. That's right. And that was a fact. That's right. And it wasn't known. And so because the lawyer didn't know. He was impeached on it. Because the lawyer didn't know that he didn't have a juvenile history, he was faced with his pre-sentence report that literally said. You said the prosecutor impeached him over where he said he had medical brain injuries? That's right. He said, well, there's no documentation of them either. But because trial counsel had not discovered. Are the military medical records been made available? Yeah, they're in the appendix. And they reflect his brain injuries? Thoroughly. His body was blown apart. That's right. And he picked up the pieces. That's right. And Colonel Gaylord testified to that. That's right. Colonel Gaylord said he's the best soldier I ever had. Yeah. To that effect. And he used him as his personal security man. Correct? Yes, Judge King. And when he was honorably discharged, he was automatically service connect in terms of veterans care, right? Yes. Automatic service, the purple card, right? Service connect. Yes. And Colonel Gaylord explained how people behave when they come home with those injuries. They don't take advantage of it. Can I just answer? Just one more question on the prosecutor. Again, having read the sentencing, I thought the prosecutor said accepting. The argument was even accepting that this gentleman came back from Afghanistan with problems. I think they said he was messed up by being in combat. He was messed up by the things he saw in Afghanistan, et cetera, et cetera. But even assuming that, that didn't excuse his behavior. That was the argument that the prosecutor made, right? That's right. They disputed the fact that he had PTSD. They disputed the fact that he had TBI. But they did concede, maybe he's messed up. And so the judge found, and this is what he said, that considering your lack of compassion as a juvenile, your violent behavior, when there was zero violent behavior in his background, and seeing nothing else to explain why, this is what the sentencing judge, any judge would be stuck on, you're shot and is cooked by mistake, you're arrested, and you go to a bar and drink and fight somebody? I can't understand that. We presented overwhelming evidence of what somebody does with PTSD and TBI, already substance abuse and alcohol abuse. The same judge heard that and said it wouldn't have changed anything. Well, maybe in rebuttal I can talk about that opinion. But I'm going to take another 17 minutes. Judge King had a question. Yes, Judge King. The lady that was shot was shot and injured very, very seriously. Terrible injuries. Yes, but I understand she had just, she had recently had. And that's the primary basis for the long sentence he got. I don't think so, Judge. She had just had abdominal surgery before this, and this is why she was taking opioids, right? Because she had had intestinal surgery. I think the long sentence reading. She's paralyzed, right? But she wasn't paralyzed from the abdominal surgery. No, she wasn't paralyzed. Right? She walked to the witness stand. She was terribly injured. The judge was very concerned about the injuries. Yes, she was injured. She was shot through the side, through the abdomen, through the leg. She needs someone to take care of her for the rest of her life. She walked to the witness stand. Yes, she was badly injured. She was shot. I would not want to be injured like she was shot. She's lucky she wasn't killed. That's right. But the judge clearly. She was actually on the crime wave that night. The judge clearly described why he sentenced Coleman. Lack of compassion and history of violence beginning to end. No explanation for why you might go and commit another crime after Cook. That is, he didn't hang his hat on these terrible injuries to Cook from this accident. On the shooting, it was how could you go out drinking? So, if you have no other questions, I'll save the small amount of time I have left for rebuttal. Thank you. Thank you, Count and Ms. Johnson. Good morning, your honors. May it please the court. Victoria Johnson for the director in this section 2254 habeas matter. To start, the only question in front of this court is whether the state court's judgment was reasonable under EDPA. And I submit that it was. To start with some of the facts, and ordinarily I would not dwell on the facts, but I believe that it's important to remind the court that Ms. Cook Moore, the county victim, was not shot accidentally. The record in no way supports that. I think that that is perhaps Mr. Coleman's version of events, but what he pled guilty to was malicious wounding. That's not an accidental discharge crime. That is a crime of malice. The facts reflect that, and this was found by the state court, and unless there is clear and convincing evidence that can rebut the presumption, that is presumed to be correct. The state court found that Mr. Coleman helped this woman. Which state court are you now talking about? I'm talking about both the Virginia State Circuit Court. But you had a sentencing court and then a habeas court. Both, Your Honor. Okay. The state's court. So you're saying courts. Yes, courts, plural. Okay. Both the Virginia, and it's confusing in this case because it was literally the same circuit court. It was the same circuit court judge. So he's very familiar with these facts, but both the sentencing court and the state habeas court found that Mr. Coleman held this woman at gunpoint for a period of time, essentially mentally tortured her by playing Russian roulette with this gun where he would, it was unloaded and he would fire it at her. Eventually he loaded the gun and shot her at very close distance and created these devastating injuries. I think that is a very important fact when considering the sentencing in this case. Additionally, Mr. The important fact here is whether the state habeas court applied the proper prejudice standard. That's the issue is whether there was prejudice from the ineffective counsel from the Sixth Amendment violation. Did the state court apply the proper prejudice standard? I'd like to hear you focus on that. Tell us what standard was applied and whether that's the correct standard. If it's not the correct standard, the one that was applied, what is the correct standard and whether you're arguing harmless error. The correct standard was applied. I'm not arguing harmless error. What's the standard that applied? The correct standard is the Strickland standard, which the state court faithfully applied. It is whether, absent any, I'm sorry, absent the, assuming counsel's deficient performance, was there any prejudice, that is any reasonable probability of a different result at sentencing. And a reasonable probability is a belief that there's lack of confidence in the outcome. And I submit that there's several reasons why this was the correct result. And I think it's important that since this is a 2254 case, that this has to be a situation where it's not just that this court thinks that the state court should have done something differently. It's that every reasonable jurist would disagree with the state court's judgment. And that's an awfully high standard. It is a high standard, but let me go back to where you started. In terms of the malicious wounding he pled guilty to, was there any evidence that he had any animus toward this lady before this? No, Your Honor. Right. That was the point. There was no reason for him to engage in the conduct that you just said. And I will say, Your Honor, that this was... Am I right? Am I right? There was no reason that he would have done that for the fact that he did, right? I'm not disputing. It's not a trick question. I'm saying you laid out what he did. The roulette, she was shot, malicious wounding. But my point is, because I was a criminal defense lawyer for a long time, and one, two questions is, did they shoot the person or do it? And the second is, why? And the second question is more important to the verdict than the first one is. Why? There's no why here, is there, in that case? No, and here's why there's no why. There's no why because this was a guilty plea. And under Primo v. Moore, that shortened record that's created by a guilty plea does not ignore to the benefit of a petitioner. No, you're absolutely right. It doesn't benefit him, but it still leaves the question of there was no why. There was not money, there was not passion. The point is, isn't that why it was so important to have this information about him? Because it explains the extraordinary situation. I mean, you do this, why would you do this? That's when you need someone to say, but Judge, because let's look at the framework of the person who came to this fateful and unfortunate day. That's why you need them. That's what the whole purpose is. Because when you got the why right there, well, because he robs people. Well, because she did him wrong. He had been threatening her for years. It's when you don't have that, that's when you need to fill the gaps of the human course of human existence. What brought this human being to this day to be sentenced for that? And that's what lawyers do. And I agree with that, Your Honor, and that goes to deficient performance. So you can see that. Yes, Your Honor. And you don't think that's important for the judge to know this person, that the depth of that, not just a sob story, but documentation of diagnosis, DSM-3 diagnosis, that's when you need that. And you're saying that the court will just sort of, well, I don't care that he went to Afghanistan and served his country and saw somebody blown away and picked up pieces and did that, that he just did this. I don't believe that judges do that. I'm not talking about compassion. I'm talking about what individualized sentencing is. I agree with the court that the defense attorney here should have put that information in at the initial sentencing. That would have been a much stronger, I mean that would have been a better tactic for that defense attorney to use. Tactic? Right, a better decision, right? He should have put it in. But it all came in at the state evidentiary hearing. This isn't a situation where the state court closed its eyes to that evidence. The state court said, bring in all the evidence you want me to hear, and I will hear it. And the court did. We had an evidentiary hearing in state court, and Mr. Coleman was able to bring in all the evidence that he could muster. And some of that evidence. And the court said it doesn't make a difference. Well, some of that evidence. The court said none of that made a difference. That's correct, Your Honor. So that means, so the question is, was that unreasonable? No, it was not, Your Honor. Okay, but that's what we have to decide. That's right. I just want to get to the point that that's what we have to determine, that you could say that wouldn't make a difference to me, that what he did in Afghanistan, what he saw, what his conditions were, none of that would make a difference. We have to just say that was reasonable, right? That's correct. Is that right? Because I thought he did present that story at sentencing. He just didn't have some of these documents we've talked about to back it up. He presented all of this happened to me, this explains why, but the argument is he just had his own testimony and a little bit of support. He didn't have all the other support that came in at the evidentiary hearing, right? So the judge is not saying, oh, it wouldn't matter to me at all that all this happened. The judge is saying, I already knew, and this extra evidence wouldn't have changed things. Am I right in understanding that? Yes, you are. You are right. And I think to be more clear. You already knew what? Everything about the diagnosis and everything? Well, Your Honor, I think that the record is clear that Mr. Coleman testified at the sentencing hearing and he expressed that he had. I'm not talking about the sentencing. It's one thing for you to say something. If your client did something, I mean, it's one thing for them to go, well, you know, I'm really messed up and I've been having problems. The first thing you do as a defense lawyer, you want to say organically from an expert what his diagnosis is. It's always strong when it comes from someone else who's apart from you because everybody says, well, I guess he would say this because it helps him. You need the buffer of science, the buffer of objectivity. I mean, I don't know why we just lose our sense of what lawyers do and what this true thing is. I know your job is it's always like your side always says you're the best lawyer there ever was. At least you are conceding that he was efficient. But that's amazing how smart you get to be with it in these IAC claims, defense lawyers. But it's different than he did that he shouldn't be left alone. I mean, this is a case perhaps if done, you probably wouldn't even have to put him on if you put things on. Well, Your Honor, as I've said, I believe that that goes to deficient performance. And deficient performance isn't the prong of Strickland that's before the court. The prong of Strickland that's before the court is prejudice. And here, all of the evidence that, first of all, this is not a situation like. You're saying the military records of this fellow wouldn't have made any difference anyway? Yes, Your Honor, because. I mean, that's what you're saying. That's what the state's saying. Yes. You're trying to play that. Absolutely. I agree with that. But I'm struck by Judge Moon's recitation on page 14 of his order of opinion about the military medical records. Reflect that Coleman experienced two traumatic brain injuries in Afghanistan within a six-month period. During his hospitalization at Lewis Gale in March 2011, he was diagnosed with PTSD. Military records corroborate his service history. At discharge, he had received a rank of E5. Do you know what that is or not? I do. It's a rank of a sergeant. An enlisted man ranks of E1 to E9. So within four years, he was an E5, which is terrific progress. His DD-14, I think it means DD-214, which is a discharge record from the military, reflect that he earned awards, these awards during his four-year tenure. Purple Heart. That's for being injured, wounded. Army Commendation Medal. Army Achievement Medal. NATO Medal. Army Good Conduct Medal. National Defense Service Medal. Afghanistan Campaign Medal. Two stars. It means he was there twice, I think. Global War on Terrorism Expeditionary Medal. Iraq Campaign Medal. One star. Army Service Ribbon. Overseas Service Ribbon. Second award. Combat Action Badge. None of these records were introduced at Coleman's sentencing hearing. Respectfully, Your Honor. Let me finish. Coleman's trial counsel signed an affidavit acknowledging he was ineffective for failing to obtain any of these records, and he opined that his ineffectiveness resulted in a prejudicial outcome for Coleman. Now, that's a striking thing that we don't see very often in a federal 2254 proceeding, and that's Judge Moon, the district court, district judge in Western Virginia, recited that in his opinion. Was there evidence of those awards at sentencing? Yes, Your Honor. Did anyone doubt that? No, Your Honor. No one doubted. No one doubted, but it wasn't presented. It was presented. That's what we're doing. Your Honor, it was presented at the original sentencing hearing. The awards and service medals were presented at the original sentencing hearing. So you think Judge Moon clearly erred? Your Honor, if that was an error, it was certainly a harmless error. He says none of these records were introduced at Coleman's sentencing hearing. I'm not talking about the state habeas hearing. I'm talking about he says they were not introduced at Coleman's sentencing hearing. That's when he got his sentence. This is Judge Moon. You say that's clear error? That is an incorrect statement. It is Exhibit D at sentencing was a list of the awards. Have you told us that the judge erred? No, Your Honor, because I'm not aggrieved. And that is harmless error. Okay. That would be the definition of harmless error. Who told you to say that? Because this is a 2254 case. While this court reviews the district court's decision de novo, what matters is whether the state court judgment was reasonable under 2254. And reasonability does not mean whether... You're saying the judge erred in saying that the trial counsel says he was ineffective and that there was prejudice? No, the trial counsel said that. That's not something that's generally given great weight. I think that that is... I'm sorry? Under Richter v. Harrington, that's not given weight, Your Honor. Whether counsel is ineffective is an objective standard. Counsel can feel bad and have bad feelings about that and admit to wrongdoing, but that doesn't give great weight. That was something that was certainly known to the state habeas court. And, Your Honor, at sentencing, Mr. Coleman testified that he had been in Iraq and Afghanistan. He testified to his military service. He testified that he had been injured. He put this in through testifying and they said he was a liar. And he was tested by cross-examination, which is always going to happen. However, when they had the state habeas hearing, every bit of evidence that Mr. Coleman wanted to come in... Was this put into the DD-14? He says it's the DD-14, the discharge record? All these Army medals? And that was before the sentencing judge with the military records? The military records as a whole did not come in at the sentencing hearing. The military records weren't there. However, there was a list... Maybe that's what Judge Moon's referring to. I'd say that's what Judge Moon's referring to. The military records reflect this and they weren't presented. They weren't presented. He testified and they claimed he was lying. Judge King, at sentencing... That's what... At the state court sentencing hearing, a sheet of paper came in with a list of the military awards and honors that Mr. Coleman had received at the state court evidentiary hearing. I do not at the moment have the app site for that. I will certainly write a court letter for it. You said evidentiary hearing or the sentencing hearing? The sentencing hearing. Okay. At the state court sentencing hearing. The full military records, every military record that Mr. Coleman wanted to put in, came in at the evidentiary hearing. That's the habeas hearing. The habeas evidentiary hearing. That's the habeas corpus hearing. Yes, that's right. That's after the sentencing. Yes. But some of the awards and medals were disclosed to the state sentencing court in 2012. And then came in and then Judge Kluge reviewed it and he said, he accepted or found that there was ineffective counsel but ruled in your favor on the prejudice problem. He found that there was deficient performance, yes. So what's on the appeal here is the prejudice problem. That's right, Your Honor. That's what we're focused on. That is what we are focused on. And here, all that evidence came in at the state evidentiary hearing, the habeas hearing, and Judge Dorsey in Roanoke accepted all of that evidence. He considered all of the evidence. And he determined that that evidence did not change his mind. That is not unreasonable. Some courts, I think possibly this court, would have given that evidence great weight. Some judges are not going to. And there's reasons in the record why the state court judge in habeas. And you agree with me that the proper test is under Strickland v. Washington, whether there is a, and I quote, whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. That's correct, Your Honor. And this case is not like, for instance, Porter v. McCollum. In that case, there was significant testimony that came in, expert testimony that came in on habeas. We don't have that here. Here, all the evidence that could be mustered did not include any expert testimony explaining how that PTSD diagnosis or those TBIs at all affected how Mr. Coleman behaved. There was no connection shown in the state habeas proceedings. The expert testimony relied upon was a one-sentence affidavit that was completely conclusory by someone who was not an expert in PTSD. The medical information, and this is right about at appendix 584, I believe, or 506, 506, 504 from Kandahar, showed that after his second TBI exposure, which is the word used in the medical note, he had a head CT that showed normal processing, no abnormal foci, no concussion, no fracture. He was noted as having a normal level of consciousness and was calm and able, had normal speech. So while certainly these medical records and his history of PTSD and his horrible experiences, and I do not mean to in any way deny that those were horrible experiences overseas, no one has shown how that affected his behavior such that his sentence should be mitigated. Another thing, your honors, is that the state court judge at sentencing way back in 2012 did not lay a lot of emphasis on Mr. Coleman's credibility. And I understand Mr. Coleman's position is that he was painted as a liar. Well, the court didn't really focus on that. The court said, I find that your expressions of remorse are not genuine. It didn't say anything about anything else. In fact, Mr. Coleman explained why he thought his juvenile record had been expunged, and he had joined the Army, which indicates that it had in fact been expunged. The sentencing judge back in 2012 knew that. There's no indication. I'm out of time. Can I wrap up? Sure. Okay, thank you. The sentencing judge knew that. Here, your honor, the question is whether the state court managed to so completely fumble, this is Mays v. Hines, this is the United States Supreme Court in 2021, completely fumbled such that every jurist of reason would disagree with him. I submit that standard has not been met, and I ask you to approve. Thank you. Thank you, Ms. Johnson. Mr. Sheldon, you have some time reserved. Thank you, your honor. Regarding Mr. Coleman's commendations and medals, two single pages were handed up at sentencing, Christopher Coleman's sentencing. Exhibit D did not have his commendations. Respectfully, I disagree. It's at page 326 of your appendix. You can see Exhibit D. It's one page, and what does it say? It says he's been discharged. That's all it says. The evidence of his commendations came through his testimony, and you know what my opinion is about his testimony. He was so thoroughly impeached by testimony of the probation officer and by cross-exam that you're a liar about your criminal history, you're a liar about your medical history, your TBI and your PTSD, that everything else he said had this gloss of he's a liar, including whether he's remorseful. Did anyone ask a question about the medals to call into question his testimony? No. I thought it was redirect. It was he had his direct testimony. Yeah, that's right. He was crossed, and then his lawyer came in and on redirect gave this list of awards as sort of the last thing he said to the sentencing judge. That's right, and nobody really cared about that. What they cared about is there's no evidence. Nobody said anything about it. The judge said a lot at sentencing, and I take that the judge cared about what he says he cared about. What he says he cared about is you have shown no compassion and have been violent from a juvenile to an adult. Wrong. You have presented us no evidence that there was any connection between that you've shown me no evidence about why after shooting was put me to death. So you're saying the judge was wrong that he had a violent history. Yes, absolutely. What part of your habeas evidentiary hearing and this appeal has to do with that, discounting that? It varies testimony. But how can we, what's the remedy? You disagree with the sentencing judge's assessment of your client's history, but there's been no, it's not as though there weren't. If there had been more records, something would have been different about that part, right? No judge. It would have been entirely different. Imagine that you're sentencing when the probation officer says he's got a long criminal history, he's been violent, and the prosecution sums up as violent, and you call the court's own employee who says, by the way, from the ages of 14 to 16. Oh, yeah, I see. This was in your brief. But there were, you said there were people they could have called who said, I didn't know anything about him being violent, but they didn't disagree. They didn't say, oh, yeah, that accusation that he was violent on X day is false. It's just that those people had a good opinion of him and didn't know about the other violence. It could have countered that, like, all I knew of him, he was a very nice, you know, boy when I was supervising him. There was no allegation of violence that went unrebutted at habeas. Why they were calling him? Sorry, I don't want to make this a sticking point, but no one came in and said he didn't commit these acts that were in his history, right? Just that the criminal history had been mischaracterized. May have been expunged, but the acts actually happened. They were mischaracterized entirely, and so we did put on, in fact, we didn't put it in our brief, but it's in the federal habeas instate because it's overwhelming about how all his behavior, because what his juvenile criminal history is, is not that he injured anybody ever. There was one felony charge that was dismissed and expunged that could have been considered violent, a break-in entering where we proved at habeas, the break-in entering was he went into a frat house at night and drank a beer. That was his break-in entering. And so why were they calling him uncompassionate and violent with a long juvenile history at sentencing? He has this medical mental history that was kind of tied up with the mitigating evidence, right? That's right, and mischaracterized entirely at sentencing and put into the proper context of the evidence you're hearing when the court's own employee who had been with him for 18 months during that time said it was his attempt to get away from the abuse at home. The alcohol use, his mental health treatment was an attempt to get away from abuse. He was the most compassionate man. When you look at the two, we might nitpick here and there, but when you look at his sentencing proceeding and you look at the evidentiary hearing, you can only draw the conclusion that the court had a complete 180-degree mischaracterization of this individual. You were going to answer my question from direct. When you first stood up, you promised that you were going to answer on your rebuttal the question about the same judge. Does it make a difference that this was the same judge? There's plenty of case law that says it's relevant. But I would say this about the same judge. Sorry, go ahead. Finish your question. The Supreme Court said that that person is particularly well-situated to assess this sort of question. I don't think we have a case like this, and so my question for you is if this judge seemed to focus at sentencing on the crimes, the judge said there's these Virginia guidelines, but they don't account for crimes like this, and then the judge hears an evidentiary hearing where they hear the additional evidence and the judge says it wouldn't have changed anything, does that have any additional weight or do we just kind of assess it for ourselves? I'd say this. What you're asking really is does the state court's habeas opinion carry more weight because it was written by the same judge that conducted the sentencing? There's its prejudice analysis, and the entire prejudice question is would the sentencing judge have done something different? That's right, and I'd say it carries very little weight in this case. That's because, first of all, we know that the Supreme Court has said it's relevant. Nevertheless, it's an objective standard. But remember there was five years between sentencing and this, and the judge did hundreds and hundreds of sentencings. Also, in neither opinion did he make witness credibility findings. That is, he didn't say in the evidentiary hearing, I remember this witness as being like this, the things that you would normally defer to. And this is relevant. I understand that you're stuck with the opinion from the state court habeas, but it's relevant that he didn't write a word, that he adopted verbatim the entire thing from opposing counsel, and the U.S. Supreme Court has also said, this is a practice that provides a disservice to reviewing courts, especially in habeas when a state court adopts verbatim 100% factual findings from an opposing counsel, especially, they said, when there is indicia of incorrect, objectively incorrect findings, and there are dozens of incorrect findings in that opinion that was written by opposing counsel. So I'd say a tiny bit of relevance that the judge was the same, Your Honor. If there are no other questions, thank you very much. Thank you, Mr. Sheldon and Ms. Johnson. Thank you for your arguments, and we can't come down and greet you, but know that we appreciate you being here to help us on these cases. Thank you so much. Thank you.
judges: Roger L. Gregory, Robert B. King, Allison J. Rushing